All right, you may proceed. Good morning, may it please the court. My name is Bill Hebert. I represent defendants and appellants in this case. If I could, I'd like to reserve five minutes for rebuttal. All right, watch the clock. Thank you, Your Honor. I'd like to confine my argument today to two points. First of all, is that the decision below was incorrect on the 1983 claim because in this case the officers of the Government of Guam were enforcing and administering a federal law so they couldn't be acting under color of state law for purposes of 19, or territorial law for purposes of 1983. Second, I'd like to address the permanent injunction which requires the Government of Guam to pay tax refunds within six months of when they become due. Counsel, if I could stop you there as to the first issue. My understanding is that you were not counsel at trial, is that correct? That's correct. And I think you came in, I think you made an interesting 1983 argument. The problem, I see, you know where I'm going with this. I know where you're going. Is that argument wasn't made to the district court. And I know you frame it in terms of subject matter jurisdiction, therefore it can kind of be raised, we have an obligation to raise it at any time if that's the situation. But can you cite us any cases that equate 1983 to subject matter jurisdiction because I've seen some cases that seem to go the other way on this. Your Honor, the cases that we cite are Seventh Circuit cases. And those cases, Your Honor, are... The ones in your brief you're referring to? The ones in the brief, yeah, that's it. Are there any other authority on this issue? Because it seems to me if you're right, we have to decide this issue first. Yes. And we may decide it in a way that may conflict with other circuits on this issue. So it's a very important question. And if I'm wrong, then you're completely within your rights to find either that it was waived or that we sufficiently raised it both in the answer as a failure to state a claim and when we came in and raised this argument in front of the district court on the cost motion. So it was actually raised in front of the district court when we objected to their memorandum of cost. And at that point, I assume that's when you were in the case at that point? Yes. Okay. Yes, yes. And of course, you could find under Dream Palace that even if we have waived it, it's purely a question of law. It doesn't affect the record below. And the other side wouldn't be prejudiced where I would submit that if you don't raise it... So on the merits, these people were territorial officers. Whatever they were doing, they were doing on behalf of Guam. Is that right? Your Honor, under the Organic Act, no. Why? For the limited... They may have been governed by federal law, but they didn't have any federal authority as such. They had authority as officers of Guam to enforce whatever law was applicable, which in some instances, it's derived from federal law in any event. Well, on the issue of whether or not... I think we all agree that the Guam Territorial Income Tax is a federal law. It's passed by Congress. That's Bank of America against Chaco, and that's the Gumatatau case. So there's no question that that's a federal law. In the enforcement and administration of that law, Congress expressly stated and essentially made agents of Guam officials or deputized them to carry it out. Under 48 U.S.C. section 1421I subsection C, Congress expressly says, Any function needful to the administration and enforcement of the income tax laws enforcing Guam shall be performed by an officer or employee of the government of Guam, duly authorized by the governor. An officer or employee of the government of Guam. Exactly. And then Congress goes on to say that the governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the territorial income tax as a secretary of the treasury and other United States officials of the executive branch. My analogy, but they didn't say he's no longer a governor, an officer or employee of the territory of Guam. Well, certainly they're paid by the government of Guam, but for the administration... They have the same powers as a federal officer, but that doesn't mean they are a federal officer. But irrespective of whether they're a federal officer, in the enforcement and administration of this law, and I'm only talking about the income tax code, they can only be acting under color of federal law because they're enforcing the Organic Act and they're enforcing the Internal Revenue Code, which is a federal law. I would submit it's logically and legally impossible for an agent of Congress to be acting under a territorial law. They're assuming he's an agent of Congress. They didn't say he was an agent of Congress. They said that by analogy, he can do anything a federal agent can do. They didn't say he is a federal agent. Again, I don't want to suggest that they become federal employees, but they do become a federal instrumentality for purposes of... So if you have a state police, and there are cases about this, if you have a state police officer cooperating with the FBI on something and enforcing, to enforce a federal drug statute, but they're state officers, they're not operating under color of state law? If they're a state officer, under that circumstance, enforcing a drug statute, again, not enforcing the income tax code on Guam, they might not be acting... They might be acting under color of federal law? Even if you have a private person working with a state officer to enforce a state law, if they're working together, they can be acting under color of state law. And the distinction there is that this is an income tax code and not a drug enforcement action. Why does that matter? It matters because for administrative convenience, Congress, back when it passed the Organic Act, said, look, we could impose a tax code on Guam, but instead of that, what we're going to do... Where's the money going? The money stays in Guam. Right. Again, for administrative convenience, Congress, and that's what the cases spell out, is that Congress did this... Who's administering the money? Under the Organic Act, the governor of Guam... So the function of the federal law is that it is providing the substantive rules, but they are operating in Guam, for Guam, as officers of Guam. And, Your Honor, here's my concern about a finding that they're operating under a territorial law. First of all, I think... It's under color of territorial law, okay? And that can include where their authority comes from. And my concern with that is this, is that there are past cases that have been very clear that when it comes to the enforcement and administration of the territorial income tax, it's a federal law. And if we open the... The statute is a federal law, but that doesn't tell you what the people are operating under. They can be doing both. And there's... Can they be doing both? They can't be doing both. Why not? Because of the Organic Act delegates to them the duty to administer and enforce this law. And the problem with going the other way, where it becomes a territorial law, is that... That's the point. I think that's... You're assuming that it matters whether the law is a territorial law as opposed to whether the people are operating under color of state law or of territorial law, i.e., their authority is derived from their status as territorial officers. Their authority is derived from the Organic Act, which gives them the power to do this. So that would apply to everything that ever happens in Guam by any officer of Guam. Is that what you're arguing? No. Why not? My argument is purely limited to the tax code. For other reasons... Well, everybody who's operating on behalf of the territory of Guam ultimately traces their authority to the Organic Act. Yes, but the Organic Act doesn't, save for the tax code, delegate to them the authority to act under federal law. And if we find that Guam officials, in enforcing and administering the act, aren't acting under color of federal law, it has two negative consequences. Number one, we reopen cases like Bank of America against Chaco and Gumatato and Bank of Guam against the United States, where it's been held that because it's a federal law, the Guam Territorial Income Tax, Guam can tax, for example, tax-free U.S. government bonds, which it couldn't do if it was a state or territorial law. The second thing is that the effect of this is that Guam citizens are the only people, only United States citizens, that can sue for tax refunds and get their attorney's fees under Section 1983. No other citizens of the country can sue to recover federal taxes under Section 1983. This is the only place they can do it. And that's a negative consequence. I wondered, by the way, whether it wasn't clear to me that that part of this case actually was being litigated under 1983, as opposed to directly under the Organic Act. Well, Your Honor, we don't challenge the finding under the Organic Act that the expedited refund process violated the Organic Act. We do challenge the ability of the plaintiffs to bring that claim under Section 1983. They have asserted in argument before the Court below that they were raising both the Organic Act and the Internal Revenue Code, and the Court found for them under Section 1983. That wasn't lucidly clear to me. I will ask them whether they're litigating that part of the case as opposed to the Equal Protection case under 1983. I think they were litigating both portions because they actually asked for a finding that the territorial officers were acting under color of territorial law. Otherwise, they wouldn't be able to get their attorney's fees for everything under Section 1983. So you want to save five minutes, and you haven't reached the fundamental issue of whether it was there for the District Court to conclude that Guam had violated the IRC and that an injunction was appropriate and your problem with the six-month deadline. I would like to turn to the six-month deadline. Again, we don't challenge the injunction with respect to the expedited refund process under the Organic Act. We do challenge the six-month injunction because essentially what the Court did was make an error of law when it concluded that what is an exhaustion requirement under the federal tax code. In other words, when you file a refund, you have to wait six months before you can sue in court to get that refund. She said that in her findings of law. But in the discussion of the summary judgment motion, she was essentially saying, well, I need to find some benchmark for a reasonable period of time. And when she actually wrote the injunction, she didn't tie it back to that legal statement. I mean, if she had simply said, look, I need a benchmark, and six months seems like a pretty good one, and this statute is some evidence that it's a pretty good one, and so I'm going to put that in the injunction, would that have been a problem? If she's basing it on an error of misinterpretation of the federal tax code. But that's what I'm asking you. I'm asking you. Take it my way. If she's not, then you're right, Your Honor. She could do that. So how do we know she didn't do that? Well, Your Honor, because of the record below, which she relied on, the internal revenue code. What are you relying on for that statement, the summary judgment motion where she had a finding of law that says that? And the papers of the plaintiffs. The papers of what? The papers of the plaintiffs. The what? The papers of the plaintiffs. I know. I heard you, but I'm saying so what? Well, and so, Your Honor, I think that the district court abused its discretion because the district court didn't look at the whole picture because a permanent injunction that is always going to require the government of Guam to pay these tax refunds in six months ties its hands. Essentially, what you're doing is you're going to – I'm not saying that she couldn't have done what I said. That's what I'm trying to find out. What I'm trying to find out is are you saying that if – that she didn't have the authority to figure out what was a reasonable period of time, given years and years of not paying anybody for years, and simply looking at the whole picture and saying, you know, I need to come up with a benchmark? Because she said, if I just say reasonable period of time, we're just going to be back here again. So I need a time period. So she came up with the six months, and if she had said explicitly, which she didn't say explicitly, but she seemed to say it in the hearing, you know, it looks like a pretty good time period. It's the period that – after which you can sue and so on, but didn't regard it as a statutory requirement. It was just as the basis for a reasonable period of time and injunction. Now, I heard you say two things. One was it would be okay, and the other is it wouldn't be okay. Well, again, if it's under the Internal Revenue Code, I think it's an error of law. I think that a district court does have discretion, sitting as a court of equity, to make that determination. I think that the district court abused its discretion by setting it at such a short time period because it ties – Did you make an argument that it would be impossible for Guam to comply with the six months? I'm not making an argument that it would be impossible for Guam to comply with the six months. It's just a matter of robbing people to pay Paul. So now, instead of essential services, we'll make sure that we pay the tax refunds. But, of course, these are not the – I mean, that's the point at which it seems to me your argument totally breaks down because this money does not belong to Guam, right? I mean, this is money that is supposed to be paid back. It was a statutory overpayment, and the federal government manages to pay it all back in a matter of weeks. And – what? I certainly wish we were in the position of the federal government. So your argument is – your substantive argument is that it's okay for Guam to use these tax refunds to fund the government. I think that the territory of Guam, particularly the executive and the legislature, have the right to manage their budget. And if sometimes that means that they would prefer to delay refund payments and pay interest – But this is money that, by definition, isn't in their treasury.  So the Guam needs to manage its budget out of its treasury. Exactly. Not by using other people's money. But if it's using other people's money where they're still getting paid interest, so they aren't injured, why can't – Well, that's a whole other argument, which you could debate whether they're injured or not. But that's not even in this case. And I assume with attorney trust fund accounts, you wouldn't have that argument.  But I don't get to – as an attorney, I don't get to use that money to smooth out the operations of my law firm. And maybe on my line of credit, I don't want to pay it off right now. I'd rather pay interest. Same thing with here. You're right. These people have a right to their refunds. Your argument about why the six months is not reasonable, just taking it as reasonable as opposed to the legal issue, is a merits argument that Guam has the right to keep the money to fund the government. It has the right to determine its budget and how to use the money. And I'm down to almost three minutes, and so I think I'd better take some time. Thank you. Good morning, Your Honors. May it please the Court. Am I audible? Go ahead. David Stein on behalf of the plaintiffs in the class. So if I may, I'll just move in the same order that counsel for the defendants did. To begin with the question of whether these Guamanian officials were acting under a color of territorial law, we'll start with the question of whether that's a jurisdictional argument. I think an important point to keep in mind here is it's not in dispute that the district court here had subject matter jurisdiction under the Organic Act of Guam, irrespective of the 1983 claim. And so the whole idea behind jurisdictional arguments not being subject to waiver is that, well, if that claim turned out to be without merit or if that basis for jurisdiction ended up being without merit, that would call into question everything the district court did in here. Just to clarify for a moment, I gather that Mr. Herbert is right that you, in fact, were bringing this claim, not only the constitutional claim, under 1983. Is that right? Or not right? I wasn't clear about that. That's fair enough, and I think it was a little bit unclear in the briefing. If you look at the First Amendment complaint, the two claims break down pretty separately. The claim for the, in effect, defendants being derelict in their duties and letting decades go by without paying refunds on time, that claim was brought under the Organic Act. The claim that was focused on the expedited refund program was a 1983 claim. We did argue, I believe during the summary judgment phase, that not the delayed payments but the expedited refund program could be construed as also violating the Organic Act. What about in the other direction? Not in the other direction. I don't believe that argument was ever made. So you're telling us that this claim isn't even a 1983 claim, so why are we worrying about it? I'm sorry. You threw me for a loop there. My understanding is you just said it was brought under the Organic Act, not under 1983 at all. Right. So why are we worrying about whether it was under color of state law or territorial law? I think that's kind of my point. I don't think, let me take a step back. So what the Organic Act says in Section 1421I, subsection H, subsection 1, is the District Court of Guam has original and exclusive jurisdiction over any case that is with respect to the Guam territorial income tax. I understand that. And I understand you're saying, therefore, they at least had jurisdiction under that. But are you also bringing this claim under 1983? Because obviously that may or may not have implications for the attorney's fees and the costs. I mean, you might be able to get the attorney's fees and costs anyway because there are two claims, one of which is a 1983 claim, but nobody's really clarified that in this case. Right. Is the first cause of action for the dereliction of duty also a 1983 claim? Yes or no? The answer is no, not under the. . . Therefore, we don't have to worry ourselves about whether it was under territorial law at all. I mean, quite aside from whether it's jurisdictional or not jurisdictional, it just doesn't matter. Right. I think where the territorial. . . It might matter. I mean, we might start hearing arguments about your fees, which we didn't, whether you have to break down the fees in some fashion for that reason. Right. But that argument was never made. Correct. And so I think where the question of whether they were acting under territorial law comes into play is the expedited refund program, which was. . . Well, but as to that, I mean, that one's just a classic constitutional claim. That's not a claim of applying the federal statute. It's a claim of violating whatever the federal statute might be. It's a claim about a constitutional violation. I don't even think he's arguing that that one wasn't brought under 1983. It's the other one he's arguing about. I think you guys are kind of at cross purposes. That may be the case. I understood his argument to be that the 1983 claim on which we prevailed. But he thinks the other one's 1983. This is very confusing. I don't know what his basis for that is. I mean, I think if you look at the First Amendment complaint and if you look at the findings of fact and conclusions of law, I don't think there's a basis in the record for saying that. So just to finish this concept, in case it does end up mattering, with respect to the expedited refund claim, there are a number of reasons to conclude that the Guam officials were acting under color of territorial law. I do think that the history of cases that have come out of the Ninth Circuit dating back to the 50s, 60s, and 70s are pretty clear. The Guam territorial income tax is what it sounds like. It's a territorial tax. It's paid by Guam residents into the Guam Treasury. It's administered by territorial officials. It's not even really the case that the Internal Revenue Code applies on Guam. Instead, and this is the Guam tau-tau case, Section 1 of the Internal Revenue Code is mirrored so that it applies on Guam as Section 1 of the Guam territorial income tax code. So these officials who are administering the tax are actually operating under Guam law. And then to get one level more granular, when you focus on the expedited refund program, there's a finding by the district court, which is based on acknowledgment by the defendants, that they believed the scant procedures that did exist for this program to be within the internal operating procedures of the Tax Department of Guam. In other words, they didn't believe they were acting pursuant to federal law or covered by some federal guideline. They thought they were acting pursuant to the Guam Tax Department protocol. So with that, I'll move on to the district court's decision to impose, within the process of crafting its injunction, the six-month deadline to pay most refunds going forward. I think someone used the phrase, I need a benchmark. I think that's what Judge Marshall was doing here. If you look at the colloquy that took place at the summary judgment hearing, there's an exchange between Judge Marshall and defense counsel where she's saying, in effect, what should the injunction look like? One option would be to order refunds to be paid within a quote-unquote reasonable time. She didn't say this, but I'm guessing some concern there was, okay, are we going to have more litigation now over what a reasonable time means? Are we going to end up right back in court? She then asked the parties to go off and negotiate to see if they could come up with the terms of an injunction, and if not, we had the opportunity to submit competing proposals. So we went through three mediation sessions with the magistrate. They were unsuccessful. Afterward, the defendants suggested a one-year deadline for the payment of tax refunds as part of the injunction. We provided a six-month proposal, and the reasoning behind that was, well, if a class member who's covered by this injunction only needs to wait six months to go ahead and file an independent lawsuit to claim their money, setting a deadline longer than that in the injunction would more or less invite further litigation, and it would just undermine the efficacy of the injunction. What is the pertinence of the finding number 19 in her findings and conclusions, which I gather was basically taken from proposed findings and conclusions? In addition, the provisions of the Internal Revenue Code applicable on Guam generally require defendants to pay refunds to taxpayers no later than six months after the filing date of the corresponding claim for refunds. Do we have to decide whether that is a correct statement of law or not? You do not, and the reason for that is the preceding paragraph, paragraph 18 of the court's findings of fact and conclusions of law, where she provides an independent ground altogether. It has nothing to do with the six-month concept, where she finds that, in effect, by falling year after year after year, falling behind in the payment of refunds, the defendants were failing to do the most basic... to the taxpayers to whom they are owed. But then when she gets to the injunction, she does put a six-month time period in, and could we conclude that that wasn't necessarily tied to the six-month legal finding or was just a six-month reasonable period? I think if you look at the process that I just tried to describe, it's pretty clear that the court didn't feel it was mandated. It was, you know, based on a legal finding, it had to impose a six-month deadline. Otherwise, it wouldn't have gone through that entire process where we were asked to try and work it out, where she considered competing proposals, where she raised the possibility of a reasonable time deadline. I think that whole process speaks to the court's thinking, and particularly when the Organic Act liability determination was made, first of all, on a line of reasoning that had nothing to do with a six-month deadline. I think that's a...we're basically operating within... was the district court within its broad discretion to set this deadline? I don't think... So one question, one other question is, I gather that the way the injunction is written and the way the process works, Guam has, in fact, been looking at these returns sufficiently to decide which ones... as to which ones the claims were valid, and that's the A category. Right. So that's not being delayed. What's being delayed is the payment after that? Right. So one of the things that we learned early on in the case is this wasn't an administrative failure for the most part. It wasn't that they were receiving so many tax returns and there were so many fraudulent tax returns that they were just backed up and couldn't get through the process. Instead, it was they had this backlog of many, many thousands of tax returns that they'd already processed. They deemed that money to be owed to the taxpayer. They didn't dispute that, and they just said, sorry, we're using that money for something else right now. We're using it for the university. Nothing in this injunction affects the administrative process. Right, and that's... It's only after they've decided whether it's refundable or not. Right. Right. So one of the things we did beginning with the complaint and all the way through the injunction is we took great care not to step on the toes of the tax department when it's performing audits, when it's offsetting against other tax liabilities, if it has a tax return that it thinks is suspicious or there's some errors in it. All of those are outside the six-month deadline. The tax department has great freedom to do all the things it needs to do in order to make sure it's properly administering the tax. The only qualification being the obvious one, once they've determined that a refund is properly owed, they can't sit on it indefinitely. They can't wait for the taxpayer to grow old and die and for his children to grow old and die, et cetera, et cetera. At some point they just need to make the payment. I wasn't anticipating that there would only be two issues raised in oral arguments. I'm happy to address any of the other issues. If they have any questions, that's fine, but we're not waiving anything by not arguing it right now because it's in the briefs, so we're well aware of all the arguments about the legal fees. Okay. If there are no other questions, then I'll submit on this record. All right. Thank you, Counsel. Could you please clarify what the summary judgment opinion says, as I understand it? The first cause of action was brought for violation of the Organic Act of Guam, and the second cause of action is under 42 U.S.C. 1983 for violation of the Equal Protection Clause.  So, as I understand it, what is your position? Your Honor, when we read the complaint, it's not clear that that second cause of action is limited to the Equal Protection Clause because it's brought under the Organic Act, and it talks about the administration of the refund payments, including but not limited to... So, in your discussion of 1983 and whether they were acting under the color of state law, you're only talking about the Equal Protection Argument or the second cause of action? The constitutional cause of action. Only the constitutional cause of action is... So, your argument is that if I come and I sue people who are officers of Guam for violation of the Constitution of the United States, that they are not acting under color of Guam law because although nothing that they were doing was... Internal Revenue Code, was it? The fact that they were having all these exceptions and that they were assertively doing it in arbitrary fashion and so on, was that authorized by the... Was that under color of the Internal Revenue Code? Were they applying the Internal Revenue Code when they did that? They were enforcing and administering the Internal Revenue Code when they were doing that. Did they do it properly? The answer is no. We agree that they weren't supposed to be expediting certain refunds and we don't challenge that under the Organic Act. But when they're enforcing and administering a federal law, they're acting under color of federal law. Even if they're not doing it right, still they're acting under color of federal law. At that point, the money has been collected by Guam. It is in the coffers of Guam.  They are keeping the money to run the government of Guam and you're saying they're not operating under color of Guam law? No, because Congress, in passing the Organic Act, made a decision. It said, we can do this in one of two ways. But people don't have to even... I mean, if you sue a state officer or a city officer who's doing something that has nothing to do with any law, he's just... If you had a state officer who was arresting someone even for a federal violation, let's say for an immigration statute, but did so completely in violation of the Constitution and was a state officer and the suit was not for violating the Immigration Act but for violating the federal Constitution, that wouldn't be under color of state law? Your Honor, I'm limiting this to the tax code that's made applicable to Guam under the Organic Act. I can't say what happened under that case. Under this case, Congress has specifically said that the officials for the government of Guam should be acting under color... or should be enforcing a federal law. And so I think they don't have any choice but to be acting under color of that federal law, whether they do it right or wrong. All right. Thank you, counsel. Your time is up. Pieste v. Guam will be submitted, and this session of the Court is adjourned for today.
judges: Wardlaw, Berzon, Owens